1

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3

     UNITED STATES OF AMERICA,        )
 4                                     )
         PLAINTIFF,                    )  CASE NO. 2:13-cr-106(1)
 5                                     )
         vs.                           )
 6                                     )
     VALERIO V. ALEXANDER,             )
 7                                     )
         DEFENDANT.                    )
 8   _____)

 9

             TRANSCRIPT OF THE PROCEEDINGS OF THE SENTENCING HEARING
10             BEFORE THE HONORABLE EDMUND A. SARGUS, JR.
                 THURSDAY, JANUARY 29, 2015, AT 1:45 P.M.
11
                            COLUMBUS, OHIO
12
     FOR THE PLAINTIFF:
13       UNITED STATES ATTORNEY'S OFFICE
         By:  HEATHER A. HILL, ESQ.
14       303 MARCONI BOULEVARD, SUITE 200
         COLUMBUS, OHIO 43215
15
     FOR THE DEFENDANT:
16       OFFICE OF KEITH A. YEAZEL, ESQ.
         By:  KEITH A. YEAZEL, ESQ.
17       905 SOUTH HIGH STREET
         COLUMBUS, OHIO 43206
18
                                       -  -  -
19

20       Proceedings recorded by mechanical stenography, transcript
     produced by computer.

21

22

23
                          LAURA L. SAMUELS, RPR
24               FEDERAL OFFICIAL COURT REPORTER
                  85 MARCONI BOULEVARD, ROOM 302
25                   COLUMBUS, OHIO 43215
                 TELEPHONE NUMBER 614-719-3245
```

2

1        Thursday Afternoon Session

2        January 29, 2015

3        - - - - -

4        THE DEPUTY CLERK:  Criminal case CR2-13-106, defendant

5   no. 1, United States of America versus Valerio V. Alexander.

6        MS. SOLOVE:  Ms. Hill is going to handle this matter.  If

7   we could just have a second.

8        THE COURT:  You may.

9        Counsel, good afternoon.  Starting with the government,

10  would you, please, enter your appearances.

11       MS. HILL:  Good afternoon, Your Honor.  Heather Hill for

12  the United States.

13       MR. YEAZEL:  Keith Yeazel on behalf of Valerio Alexander,

14  who's present in the courtroom.

15       THE COURT:  Good afternoon.  And, Ms. Hill, would you,

16  please, indicate on the record the current status of this case?

17       MS. HILL:  Yes, Your Honor.  In January of 2014 the

18  defendant, Valerio Alexander, entered a plea of guilty to one

19  count of child sex trafficking, in violation of 18 United States

20  Code Section 1591.  We are here today for the defendant to be

21  sentenced pursuant to that guilty plea.

22       THE COURT:  Thank you.

23       Mr. Alexander, have you received a copy of the

24  presentence investigation report in this case?

25       THE DEFENDANT:  Yes, Your Honor.

3

1    THE COURT:  And there has been a subsequent addendum

2    that's followed.  Mr. Yeazel, has Mr. Alexander also seen that

3    document?

4    MR. YEAZEL:  Yes, we discussed the addendum.

5    THE COURT:  All right.  There are some objections we will

6    resolve in just a moment.  But, Mr. Alexander, have you also had

7    the opportunity to read the document and discuss it with your

8    counsel, Mr. Keith Yeazel?

9    THE DEFENDANT:  Yes, Your Honor.

10   THE COURT:  All right.  Mr. Yeazel and Ms. Hill, I'm

11   going to give you advance notice, I am going to adopt and accept

12   the plea agreement that you've reached, but that still leaves

13   objections.  I don't want to overlook those.  We can address those

14   at this time.  We will start with objection no. 1 from the

15   government.  Actually, it's listed that way.  It's actually by the

16   defense.  There is no objection from the government.

17   MS. HILL:  Your Honor, there are no objections from the

18   government.

19   THE COURT:  All right.

20   MS. HILL:  We have responded to all of the defense's

21   objections.

22   THE COURT:  Mr. Yeazel, you may address your first issue.

23   MR. YEAZEL:  Thank you, Your Honor.  Well, Your Honor, as

24   we set forth in our written objections, we object that there's an

25   enhancement that is applied where there is a presumption that he

4

1    unduly influenced a minor.  We believe that he did not unduly

2    influence the minor.  There's a significant number of reasons.

3    The first reason is, of course, she's 16 years old.  And in Ohio,

4    age 16 is the age of consent.  And, yes, she can consent to engage

5    in illegal activity in the Ohio.  That consent also allows you to

6    consent to sex.

7           THE COURT:  That's not the federal age, though.

8           MR. YEAZEL:  Right, that may not be the federal age, but

9    it's the state age.  And there's probably a Constitutional issue

10   there, probably under the Tenth Amendment or maybe under the

11   Ninth.  The point that I'm making is that just because he was 46

12   years older -- older than the minor, that presumption should be a

13   bursting bubble presumption especially in this case when the facts

14   show that the mother of the child was the one who basically

15   brought this woman into sex trafficking.

16          We do not believe that he provided her specifically with

17   drugs or condoms to the minor.  That information solely comes from

18   these other people and not from the defendant.  And he certainly

19   did not tell her how to talk to prostitution clients.  The record

20   clearly would show that Chardanay was the person who did that.

21   And we think that the presumption, therefore, should be rebutted.

22          THE COURT:  All right.  I'll note your objection.  I'm

23   going to overrule that objection.

24          MR. YEAZEL:  Thank you, Your Honor.

25          THE COURT:  We'll go to objection no. 2.

5

1      MR. YEAZEL:  The next one is the enhancement for the

2  computer.  And in this case, he didn't use a computer.  That was

3  used by Chardanay to upload photographs and put an ad on Facebook

4  -- or not Facebook, backpage.  And we believe that that

5  enhancement is improper for those reasons.

6      THE COURT:  All right.  I want to note this is not going

7  to change the way the 11(c)(1)(C) plea is made, but I am going to

8  sustain that objection.

9      MR. YEAZEL:  Thank you, Your Honor.  Your Honor, there's

10  a two-level enhancement for causing a minor to engage in a sex act

11  or sexual contact.  We believe the evidence shows that the

12  defendant didn't place this ad on backpage.  This, in fact, was

13  placed by Chardanay, and she did all that.  So we would say that

14  he wasn't the person who did that.  It was the mother and

15  Chardanay together that got this girl to engage in sexual activity

16  for hire.

17      THE COURT:  Ms. Hill, I don't mean to pass you by, but

18  I'm prepared to overrule that objection.  You may be heard, if you

19  wish.

20      MS. HILL:  Your Honor, I will -- If Your Honor is

21  prepared to overrule that objection based on the arguments that

22  are contained in the PSR addendum, then I have nothing further.

23      THE COURT:  All right.  Thank you.

24      Then we'll go to objection no. 3.

25      MR. YEAZEL:  I believe that's the role in the offense

6

1    objection.

2           THE COURT:  All right.

3           MR. YEAZEL:  And we believe that there's no proof that

4    Mr. --

5           THE COURT:  Actually, I'm sorry, I don't want to confuse

6    you on this.  I think no. 3 has to do with guideline 2G1.3 -- and

7    then there's a number of these -- (b)(4)(B).  But that has to do

8    with engaging a minor in a sex act.

9           MR. YEAZEL:  Yeah, I think I just covered that, Your

10   Honor.

11          THE COURT:  I'm going to overrule that as well.

12          We will go to no. 4, which is the role in the offense.

13          MR. YEAZEL:  Yes, Your Honor, the role in the offense.

14   We don't believe that he was a manager or supervisor of Jane Doe

15   No. 1 or Thomasina Howard and do not believe there's any proof

16   that he induced -- or directed Chardanay to induce Jane Doe to

17   engage in commercial sexual activity.  It is our position that

18   Chardanay was acting independently of Mr. Alexander with respect

19   to Jane Doe No. 1.

20          THE COURT:  Ms. Hill, what's your view?

21          MS. SOLOVE:  Your Honor, the facts that were established

22   during the plea hearing in this case showed that the defendant was

23   the one who drove Chardanay to the house to pick up both Jane Doe

24   No. 1 and Thomasina Howard, that he was -- basically brought them

25   all together, that he took the pictures, that he gave them, gave

7

1    the pictures, to Chardanay for her to place on backpage, that he

2    then directed Jane Doe No. 1 and Chardanay's discussions about how

3    they would be -- or how Jane Doe was to engage in commercial

4    sexual activity.  So he was overseeing both the activities of Jane

5    Doe No. 1 and Chardanay; and based on that, we do believe that he

6    is properly charged with this enhancement for being a supervisor

7    or a manager of at least one -- of one or more participants.

8            THE COURT:  All right.  I'm going to overrule that

9    objection for the reasons just given by Ms. Hill.

10           And we'll go to the last objection, which has to do with

11   acceptance of responsibility.

12           MR. YEAZEL:  Thank you, Your Honor.  Well, Your Honor, as

13   the presentence investigation report notes on page 6, paragraph

14   25, Mr. Alexander agreed with the statement of facts and didn't

15   want to elaborate further on his involvement or manner.  And under

16   application note (1)(a) of 3E1.1 of the United States Sentencing

17   Guidelines, the defendant may remain silent in respect to relevant

18   conduct beyond the offense of conviction without affecting his

19   ability to obtain a reduction under this statute.

20           We believe those two factors, if you read those *in pari*

21   *materia*, the facts as well as the legal standard under 3E1.1, that

22   he in fact has accepted responsibility.

23           THE COURT:  So, Ms. Hill, we both know the history, as

24   does Mr. Yeazel.  I don't think there would be an entitlement to

25   the third point for sure.  That would be under 3E1.1(b).  What is

8

1    the government's view as far as the two points under part (a) of

2    that same guideline?

3         MS. HILL:  Well, Your Honor, obviously we tried to get

4    out of having to take any position on this in our response to

5    Ms. Boucher's -- or the objections that we gave to Ms. Boucher

6    because I -- and, frankly, I just find it very difficult --

7         THE COURT:  And you do understand, I want to be clear

8    again, this is not going to change what you've agreed to.  So --

9         MS. HILL:  I understand.  And while if he were just

10   objecting to the relevant conduct, then I would agree with

11   Mr. Yeazel.  But this is a case in which there have been two

12   motions to withdraw his guilty plea.  He got on the stand himself

13   and essentially tried to say he had nothing to do with this and

14   that it was all Thomasina Howard and Chardanay on their own, is

15   sort of saying the same thing here today.  And that, with all of

16   those facts, I find it very hard to call this acceptance of

17   responsibility.

18        Balancing that out, however, against the fact that he did

19   come in here on the date of his guilty plea and he did accept the

20   statement of facts as true and accurate, and that is why we're all

21   here today.  So those are sort of the two competing factors that

22   the government is looking at.

23        I think that initially, and I believe in one prior

24   version of the PSR, he was given acceptance of responsibility.  I

25   think that that was accurate.  But I think when you look at the

9

1    facts that have occurred since that time, since that initial PSR,

2    I think it's very hard to say that a defendant in this position,

3    who has taken these actions, really has accepted responsibility as

4    that is defined in the guidelines in section 3E1.1.

5           THE COURT:  Well, I think it's a close call, and, again,

6    I note that this will not change the ultimate computation of

7    sentence in this case, but for the sake of caution, I'm going to

8    grant the objection as far as two points.

9           So there are two objections that have been sustained.

10   That will reduce the offense level by four.  Just to make sure

11   we've done the math correctly, by my computation that would give a

12   final offense level of 34, and the criminal history category will

13   stay the same at a VI; and that yields a sentencing guideline

14   range of 262 to 327 months.

15          All right.  Mr. Yeazel, you may address -- I have

16   received, of course, your submission in writing.  But you may at

17   this time address any issue you believe relevant to sentencing.

18          MR. YEAZEL:  The only issue that I have not raised in my

19   sentencing memorandum with the Court, Mr. Alexander wanted me to

20   raise the issue of the fact that Thomasina Howard got 5 years, and

21   he's going to get 15 years.  And Thomasina Howard is actually the

22   mother of Jane Doe No. 1 who introduced her to prostitution.  He

23   understandably finds that those sentences are somewhat

24   incongruent, that he's getting a sentence that's not two times

25   but --

10

1          THE COURT:  And I -- There is a great disparity there,
2     but there are two issues, and I would like to address both of
3     those.  One is that she cooperated.  He did not.  And the other is
4     he is in the highest possible level of a criminal past.  He is in
5     a category of VI.  She was in a category of I as I -- Ms. Hill,
6     you may correct me if I'm wrong.
7          MS. HILL:  That's not correct, Your Honor.  She did have
8     a significant criminal history as well.
9          THE COURT:  What category was she in, do you recall?
10         MS. HILL:  I don't remember, but I know that she had a --
11         THE COURT:  She wasn't a I.
12         MS. HILL:  She was not a I.
13         THE COURT:  Okay.  Thank you.  That's -- But there was
14    some difference in the criminal history category, huge difference
15    in the cooperation.
16         MR. YEAZEL:  And she also got a charge bargain, and
17    that's just simply -- we're just going to leave it at that, Your
18    Honor.  Those are the bases for Mr. Alexander's last and final
19    objection, Your Honor.
20         THE COURT:  All right.  Mr. Alexander, if you would like
21    to speak, this would be the time.  You're not required to, but you
22    may, if you wish.
23         THE DEFENDANT:  No, that's it, Your Honor.  Mr. Yeazel
24    covered everything.
25         THE COURT:  All right.  Ms. Hill, anything additional?  I

11

1    have your memorandum in support of the plea agreement reached as

2    well.  And anything that you would like to add at this time would

3    be appropriate.

4         MS. HILL:  Your Honor, I will be very brief.  In brief

5    response to Mr. Yeazel's comments, there is a significant

6    disparity in the sentence that was given to Ms. Howard and this

7    defendant.  And that is in part due to her cooperation, and her

8    cooperation extends to an overwhelming acceptance of

9    responsibility in which she came to the government, admitted her

10   guilt, had obvious complete remorse for that, not only aided the

11   government but also made significant steps to try to remedy her

12   behavior.

13        And as we were in sentencing on Ms. Howard's case, I

14   believe I informed the Court of various reasons why we had made

15   the plea agreement that we made with her, that in addition to the

16   cooperation, that there has been significant issues in her past,

17   and it was her history and characteristics, her background in and

18   of itself that it appeared to the government from all of the facts

19   from Ms. Howard and all the other witnesses that we had talked to

20   that in fact this defendant was the one who was not only bringing

21   the minor victim, Jane Doe No. 1, into prostitution but did so by

22   manipulating the mother's cocaine addiction.  And so from the

23   government's point of view, he is more culpable; and that is why a

24   sentence of 15 years is warranted because this is a serious

25   offense.

12

1        And Ms. Howard got a significant sentence based on all of

2    the factors and her cooperation.  She's still doing jail time and

3    will still serve a term of supervised release and a term of

4    supervised release that will require her to do a significant

5    number of things.

6        But the offense is serious.  This defendant's culpability

7    for the offense, from the government's perspective, is much more

8    serious, and that's why this sentence of 15 years is warranted,

9    particularly in light of the various significant sentences

10   indicated by the guideline range he's getting a break, even though

11   he hasn't fully, from the government's perspective, accepted

12   responsibility and never did cooperate with the government.

13       So for all of those reasons, Your Honor, we do believe

14   that this is -- this is fair.

15       THE COURT:  Thank you, Ms. Hill.

16       Mr. Yeazel, you can have the last word, if you wish.

17       MR. YEAZEL:  Well, Your Honor, I think we set forth in

18   the sentencing memorandum that we believe, because the deal was

19   made and the Court has accepted the plea agreement, that, well --

20       THE COURT:  I haven't yet, but I'm about to.  So, all

21   right.

22       MR. YEAZEL:  That you're going to give him 15 years, and

23   we understand that that's what's going to happen.

24       THE COURT:  Before we proceed to sentencing, let me ask

25   you both, the presentence report -- which by the way is a very

13

1   well written report, Ms. Boucher, thank you for that -- there are

2   several dates listed as to when the defendant came into custody.

3   And I would like to pinpoint the date this sentence will start

4   before we begin.

5          He was arrested in March of 2013 by state law

6   enforcement.  He came into the marshal's custody on May 1 of 2013.

7   Do you have a view as to the start date?

8          MR. YEAZEL:  He indicated to me before the court

9   proceeding that he thought that he was arrested on the 7th.  Okay?

10         THE COURT:  Well --

11         MR. YEAZEL:  And I know it says that he was arrested on

12  the 8th of --

13         THE COURT:  Well, there's that issue.  But there's also:

14  Who did the arrest?  These are the state authorities at that

15  point.

16         MR. YEAZEL:  We believe, Your Honor, that because he was

17  arrested by state law enforcement, that those days should count

18  because it's the same case.  And it would be like adopting a drug

19  case.  It's the same thing.

20         THE COURT:  Ms. Hill, it's the same operative factors

21  that we're talking about, isn't it?

22         MS. HILL:  Well, he was arrested on the same sort of

23  issues, charges, in a related incident.  He was not actually kept

24  in state custody during that time between his arrest on state

25  charges and his being --

14

1          THE COURT:  So that's the --

2          MS. HILL:  -- brought into the marshal service is because

3     he had a detainer through ICE.  So it's completely an

4     immigration-related matter that kept him held until May 1 when he

5     was -- when an arrest warrant was filed in this case -- or

6     actually, I believe it was the indictment, yes, that was filed in

7     this case, and he was brought into the custody of the United

8     States Marshal Service.

9          THE COURT:  So he would have bonded out on the state

10    charges, but there was a holder from ICE --

11         MS. HILL:  That is correct.

12         THE COURT:  -- Immigration and Customers Enforcement.

13    But the holder -- He was here illegally, but he was also charged

14    with a serious felony.  So it was a combination that caused the

15    holder to be put on.

16         MS. HILL:  The basis for the holder was not actually the

17    state charges because I believe those were actually dismissed

18    rather quickly.  It was because of his prior criminal history that

19    had never been discovered by ICE.  So in a way, yes, these state

20    charges made ICE aware of this individual and his prior criminal

21    history.  But he was not -- The detainer was not due to him being

22    charged with anything related to this case.  It was because of his

23    criminal history, that he actually should have been processed

24    through ICE at some prior date --

25         THE COURT:  Well, to be blunt, to be precise, he was here

15

1    illegally at the time the holder was put on, but the other charges

2    that preceded this would have been enough to deport him.

3           MS. HILL:  Correct.  His prior convictions --

4           THE COURT:  Yes.

5           MS. HILL:  -- would have been enough to deport him, yes.

6           THE COURT:  Yes.  Mr. Yeazel?

7           MR. YEAZEL:  Your Honor, we would note, and I believe the

8    proper citation is United States Sentencing Guideline 5C1.3, we

9    would request, because this is time that will not be attributed to

10    any other sentence, that the Court has the authority to depart, in

11    other words, and by depart, merely subtract off the time that it

12    would impose, the amount of time that he would have received if

13    the Bureau of Prisons would credit this.  And I don't believe the

14    Bureau of Prisons is going to credit from 3-8-2013 until he was

15    arrested and detained by the U.S. Marshal Service --

16           THE COURT:  What was your citation again?

17           MR. YEAZEL:  I believe it's 5C1.3, Your Honor.  I think

18    it is, but I'm not --

19           THE COURT:  It stops at 1.2.  So it can't be that.

20           MR. YEAZEL:  Is that the new guideline?  I have a book,

21    Your Honor.

22           THE COURT:  That's all right.  Well --

23           MR. YEAZEL:  You have the authority to --

24           THE COURT:  I don't want the sentence to count twice, but

25    I do want it to count once.  So at this point I am going to find

16

1    that the sentence began at the time of arrest, which was March 3,

2    2013, and he has been in custody ever since that time.

3                MR. YEAZEL:  Yes, Your Honor.

4                THE COURT:  All right.

5                MR. YEAZEL:  That resolves that issue.  Thank you.

6                MS. HILL:  Your Honor, very briefly, the PSR indicates it

7    was actually March 8.  It doesn't really -- It's a matter of five

8    days, but --

9                THE COURT:  Well, did I say 3rd?

10               MS. HILL:  Yes.

11               THE COURT:  It's March 8.

12               MS. HILL:  Okay.

13               THE COURT:  That's what I meant to say, March 8.

14               MS. HILL:  Very well, Your Honor.

15               THE COURT:  It corresponds to the presentence report.

16               All right.  The defendant is before me for sentencing

17   after pleading guilty to Count Two, sex trafficking of children,

18   in violation of Chapter 18 of the United States Code Section 1591,

19   parts (a) and (b).

20               There's a preliminary matter.  The parties have entered a

21   plea agreement under criminal rule 11(c)(1)(C), which sounds very

22   mathematically, but bluntly, it is an agreement that the parties

23   have asked me to adopt, and I have the option of accepting the

24   agreement or rejecting it.  If I reject it, then either party may

25   withdraw from the agreement.

17

1      As I told counsel when the plea was first submitted and

2    defendant pleaded guilty to the charges, I accepted the plea of

3    guilty, but I reserved accepting the plea agreement until I had a

4    chance to see the entire plea report, a final presentence

5    investigation report, which I've done. And as we'll talk in just

6    a moment, the agreed sentence is severe, but the guidelines are

7    even more severe. So for reasons I'll express throughout this

8    sentencing, I believe that what the parties have agreed to is a

9    fair resolution of the matter, and I'm going to accept the plea

10   agreement. But I'm also going to walk through the formalities of

11   what otherwise would be the sentencing analysis.

12      My first task is to correctly compute the sentencing

13   guideline range, and I compute that to be 262 to 327 months for

14   the reasons already given. I am next to look at the guidelines

15   themselves to see if there are any appropriate departure bases,

16   and I find there are none for either an upward or downward

17   departure, particularly in light of the agreement reached by the

18   parties. And then the last and most difficult part is to look at

19   a number of facts under federal criminal law under section 3553(a)

20   of Chapter 18.

21      I am first to look at the nature and circumstances of the

22   offense together with the history and characteristics of the

23   defendant. In the Court's view, the offense is of a very great

24   magnitude. The defendant basically solicited an individual who

25   was a minor to allow herself to be photographed in a sexually

18

1   explicit way and then to, on the Internet, to essentially

2   advertise her for services, which she provided to at least one

3   person, under his direction.  So what we have is a minor being

4   prostituted and the use of interstate facilities to accomplish

5   that crime, which the Court views as, short of homicide, one of

6   the most serious crimes that a person can commit under the federal

7   criminal code.  So that first factor weighs heavily in favor of a

8   lengthy sentence.

9         The other factor I just mentioned is the history and

10  characteristics of the defendant.  The sentencing guidelines

11  sometimes themselves can seem rather mechanical, but one thing

12  that is always of importance is the criminal history a defendant

13  has, and they are ranked on a scale of I, being basically no

14  criminal history, to a scale of VI, which is the highest.

15        The defendant falls into the highest category because he

16  has at least two prior felony drug convictions making him a career

17  offender.  If it weren't for that provision of the guidelines, he

18  wouldn't hit a VI, but he would hit very close to it with a V.  He

19  has a long criminal record.  There's seven adult convictions that

20  are too old to count.  He has convictions for trafficking in

21  cocaine, possessing cocaine, absconding, additional possession of

22  cocaine on repeated times, all indicative of an uncontrolled drug

23  habit.

24        The second factor I'm to look to is to impose a sentence

25  that reflects the seriousness of the crime, to promote respect for

19

1    the law, to provide adequate deterrence both to Mr. Alexander

2    himself but to other persons who would look at a sentence like

3    this and determine exactly what they could expect.  That

4    particularly is a matter the Court takes seriously in this case.

5          And also provide the public with protection from anything

6    -- from any further crimes from the defendant is also a factor in

7    this case.

8          And also to provide the defendant with any type of needed

9    medical care or other correctional treatment, which we'll talk

10   about in a moment the need for drug treatment in this case.

11         I am next to look at the sentencing guidelines themselves

12   together with any policy statements made by the sentencing

13   commission in this area.

14         And then the last factor that applies in this case, I

15   want to spend a moment discussing it, and that is the need to

16   avoid unwarranted sentence disparities.  This guideline doesn't

17   specifically mention someone else who might be a co-defendant, in

18   the case of Ms. Howard, but I will discuss it both in the abstract

19   but also with regard to her.

20         Whenever comparisons are made between defendants, because

21   a fair sentencing regime, of course, would have some relationship

22   among defendants to the sentence received, but the first thing in

23   a fair comparison is to look at what is similar and what is not.

24         The first dissimilarity with Ms. Howard is that she gave

25   the government substantial cooperation, which under the guidelines

20

1      under this code section is always an important factor.  She has a

2      criminal record but not as lengthy or as aggravated as the

3      defendant's.  She received acceptance of responsibility.  She

4      received a cooperation agreement in her conduct.  I will leave it

5      to the government to weigh exactly the gravity of each.  It looks

6      to me as they both had pretty significant responsibilities here.

7      I would agree with the government that Mr. Alexander's were

8      somewhat greater.  And those two factors, the great involvement,

9      her cooperation and her acceptance of responsibility, all justify,

10     in the Court's mind, a difference in the sentences with these two

11     defendants.

12             The last issue of restitution is not an issue in this

13     case.

14             So for all these reasons I initially find that the

15     agreement reached by the parties is fair.  The government is

16     spared the burden of a trial, particularly with a minor victim in

17     this case.  The defendant receives somewhat of a benefit because

18     his sentence is below the guideline range otherwise applicable in

19     this case.

20             Taking all of these factors into consideration, it will

21     be the judgment of the Court that the defendant shall be placed in

22     the custody of the Bureau of Prisons for a term of 180 months.  He

23     will serve a term of supervised release of five years upon his

24     release.  And he will pay a special assessment in the amount of

25     $100 and forfeit the property listed in the criminal forfeiture

21

1    count of the indictment.

2        He will comply with the standard conditions of supervised

3    release imposed by the court.

4        And he will submit to a collection of a sample of his DNA

5    by the Bureau of Prisons or his probation officer.

6        He will also comply with several special conditions of

7    supervision.  While on supervised release, he will register as a

8    sex offender and be subject to the provisions of the SORNA Act,

9    the federal Sex Offender Registration and Notification Act,

10   together with any applicable state sex offender notification law

11   in effect any place where he lives, works or goes to school.  And

12   that will be detailed in the presentence report to dovetail with

13   the language in -- the judgment and commitment order will dovetail

14   with the language in the presentence report.  Second, he will

15   participate in any type of testing and treatment for alcohol and

16   controlled substance abuse directed by the probation officer and

17   will be responsible for a co-pay.  And third, he will absolutely

18   have no contact with the victim in this case nor with the

19   co-defendant.

20       I dismiss Count One of the indictment pursuant to the

21   terms and conditions of the plea agreement.

22       I will also recommend that he receive drug treatment

23   during the time he spends in the custody of the Bureau of Prisons.

24       Are there any objections you'd like to lodge or any other

25   sentencing matters I have not addressed?

22

1          MR. YEAZEL:  The only other matter, Your Honor, he

2    requests that you recommend that he be placed in Elkton so he can

3    be close to his children who live here in Columbus.

4          THE COURT:  All right.  I will recommend that.

5          MR. YEAZEL:  Thank you, Your Honor.

6          THE COURT:  Anything additional from the government,

7    Ms. Hill?

8          MS. HILL:  No, Your Honor.

9          THE COURT:  Mr. Alexander, it's also my obligation to

10   review with you your right to appeal the sentence I have just

11   given you.

12         MS. HILL:  Your Honor, if I could interrupt, I believe

13   the plea agreement actually has a waiver of his appellate rights.

14         THE COURT:  Right, and there are some exceptions that I

15   seriously doubt would apply here, but I want to at least go

16   through the colloquy with him.  You will recall there is the

17   ineffective assistance of counsel, which I'm sure didn't occur, or

18   misconduct by you, which I'm also sure didn't occur.  But I just

19   want to go through the formalities.

20         MS. HILL:  I apologize, Your Honor.

21         THE COURT:  First of all, if you have any doubt about

22   your appellate issues, Mr. Alexander, so you understand, you can

23   consult with Mr. Yeazel, and he will give you advice as to how you

24   will pursue this.  Do you understand that?

25         THE DEFENDANT:  Yes, Your Honor.

23

1      THE COURT: You have 14 days from today's date if you

2   wish to appeal. If you are unable to afford the filing fee or a

3   lawyer to represent you, you may apply to the court, and the

4   filing fee may be waived, and a lawyer appointed to represent you.

5   Do you understand all of that?

6      THE DEFENDANT: Yes, Your Honor.

7      THE COURT: Do you wish to appeal the sentence that I

8   have just given you?

9      THE DEFENDANT: Yes, Your Honor.

10     THE COURT: All right. Mr. Yeazel, will you perfect at

11  least the initial appeal if that's what he'd like to do? And, of

12  course, he understands the waiver matters we have just discussed.

13     MR. YEAZEL: Yes, Your Honor, I will do that, and I will

14  do it as soon as Mr. Quisumbing files the judgment and commitment

15  order.

16     THE COURT: I appreciate that. Thank you. And I want to

17  thank you for your service, Mr. Yeazel. You've not had an easy

18  task, nor have you, Ms. Hill. So I appreciate your service on

19  behalf of the court.

20     Are there any other matters further in this case?

21     MS. HILL: No, Your Honor, thank you.

22     MR. YEAZEL: Not on behalf of the defendant.

23     THE COURT: With that, we will be in recess.

24                          -  -  -

25

24

1                    C E R T I F I C A T E

2                            -  -  -

3          I, Laura L. Samuels, do hereby certify that the foregoing is

4     a true and correct transcript of the proceedings of the Sentencing

5     Hearing, in the case of:  United States of America, Plaintiff, v.

6     Valerio V. Alexander, Defendant, case no. 2:13-cr-106, before the

7     Honorable Edmund A. Sargus, Jr., Chief Judge, in the United States

8     District Court, Southern District of Ohio, Eastern Division, on the

9     date indicated, reported by me in shorthand and transcribed by me or

10    under my supervision.

11

12

13

14

15                                   /s/ Laura L. Samuels
                                     Laura L. Samuels, RPR
16                                   Federal Official Court Reporter

17

18

19

20

21

22

23

24

25